**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alicia DAVIS (85–1153), Duane Davis (85–1178), Kenneth Davis (85–1288), Howard Ransom (85–1366), Defendants-Appellants.**

Nos. 85–1153, 85–1178, 85–1288 and 85–1366.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 29, 1986.

Decided Jan. 15, 1987.

Roy C. Hayes, U.S. Atty., Detroit, Mich., Gary M. Felder (argued), Wayne F. Pratt (argued), for the U.S.

John G. Burns (argued), Woodhaven, Mich., for Alicia Davis.

Raymond Mullins (argued), Ypsilanti, Mich., for Duane Davis.

David J. Esper (argued), Dearborn, Mich., for Kenneth Davis.

Stuart M. Rudick (argued), Detroit, Mich., for Howard Ransom.

Before KEITH and WELLFORD, Circuit Judges, and TODD *, District Judge.

KEITH, Circuit Judge.

Defendants Alicia Davis, Duane Davis, Kenneth Davis and Howard Ransom appeal their convictions in the United States District Court, Eastern District of Michigan for conspiracy to distribute heroin, conspir-

* Honorable James D. Todd, United States District Court for the Western District of Tennessee, sitting by designation.

acy to possess heroin with intent to distribute, and conspiracy to import heroin in violation of the Controlled Substances Act, 21 U.S.C. § 846 (1981), and the Controlled Substances Import and Export Act, 21 U.S.C. § 963 (1981).[1] The defendants collectively contend that the district court erred by allowing Government attorneys to state their reasons for the exercise of peremptory challenges in an *in camera* proceeding rather than on the record or in the presence of defense counsel. The issue arose in the context of the defendants' motions for mistrial. The motions were based on the allegedly racist motivations of the Government in exercising its peremptory challenges. Defense counsel attacked the Government's peremptory challenges as being intentionally discriminatory against black venirepersons so as to remove all blacks from the jury panel.

The defendants separately raise a host of additional appellate issues, including insufficiency of evidence, double jeopardy, improper joinder, illegal seizure of evidence and outrageous Government conduct. For the reasons set forth below, we affirm the convictions of the defendants on all counts, with the exception that defendant Duane Davis' sentences for the offenses predicate to the charge of operating a continuing criminal enterprise be vacated.[2]

The defendants were the primary participants in a multimillion dollar international heroin trafficking organization. The organization, in operation from October 1979 to August 1982, obtained large quantities of heroin from defendant Ransom in the Netherlands and smuggled the heroin by courier to defendant Duane Davis in Detroit. Defendant Alicia Davis, Duane's wife, recruited a friend to act as a courier of cash and heroin between Ransom in the Netherlands and Detroit. Defendant Kenneth Davis sold the heroin on a wholesale basis to the organization's customers.

## I.

### FACTS

To place the issue firmly in context, the proceedings below are outlined in some detail. After the first trial of defendants Alicia, Duane and Kenneth Davis ended in mistrial in May 1984, *a second eight week-long* trial commenced later that year. At the start of the jury selection process, the trial court called 86 prospective jurors, all of whom were sworn in and examined by the trial judge. According to the record, nine out of the 86 venirepersons were black. Prospective jurors sat in the jury box and counsel for the parties were given the opportunity to exercise a peremptory challenge or a challenge for cause. Once a juror was challenged, his or her vacant seat in the jury box would then be taken by another prospective juror from a "pool" of venirepersons sitting in the court's gallery.

The record indicates that the Government made no challenges for cause. Defense counsel's single challenge for cause was rejected by the court. Once the opportunity to make peremptory challenges was presented, the Government attorneys struck eight venirepersons, three of them black. Defense counsel struck approximately ten venirepersons, all of them white. At this point in the proceedings, defense counsel objected on the grounds that it was "fairly obvious that the Government [was] making a concerted attempt to exclude any members of the black race from this jury panel." The Government attorney responded by noting that under *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Government was entitled to the presumption that it would seek to impanel a fair and impartial jury absent proof to the contrary. *See Swain*, 380 U.S. at 222, 85 S.Ct. at 837.

---

1. Defendant Alicia Davis also appeals her conviction for unlawfully using a telephone in violation of 21 U.S.C. § 843(b) (1981). Defendant Kenneth Davis appeals his additional convictions for distributing heroin and possessing heroin with intent to distribute. Defendant Duane Davis appeals his additional convictions for possessing heroin with intent to distribute and operating a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1981).

2. *See infra* p. 1199.

The district court took the objection under advisement.

After a second round of peremptory challenges removed approximately 16 venirepersons from the jury panel, defense counsel repeated its objection. Again, the district court took the issue under advisement. After seven additional peremptory challenges by the Government and three challenges by defense counsel, defense counsel raised the exclusion issue a third time, declared that they were not satisfied with the jury as impaneled and explained that they would have continued to challenge the impaneled jurors had they not run out of peremptory challenges.

The Government removed seven out of the nine black venirepersons on peremptory challenges. The remaining two were removed for cause. In response to these facts and the objections raised by defense counsel, the district court outlined a two-step procedure to handle the issue. First, the court would review the facts to see if there was a prima facie basis for a charge of racially motivated exclusion from the jury panel. Second, if the defendants established a prima facie case, the court would require the Government to present reasons for the challenges of the black venirepersons on the record in an non-adversary proceeding. United States District Court Judge Cook emphasized that the court's response was not intended to be a per se rule but rather a procedure specific to the issues and facts of the controversy. Before the proceeding could begin, the Government requested that the explanation of the reasons for the peremptory challenges be held *in camera*. The district court acceded to the Government's request over defense counsel's strenuous objection. The court, however, decided to wait until after the Government made its presentation to determine whether to disclose part, all, or none of the *in camera* proceedings on the record.

Our careful review of the sealed transcript of the ensuing *in camera* hearing confirms that the Government set forth its criteria in evaluating potential jurors and outlined reasons for the exclusion of the 19 venirepersons it excluded, black and white. The district court, after its own review, made a specific finding that the Government did not have a racial motive in the exclusion of black jurors. The court concluded that there was no genuine relationship between exclusion and the juror's race. The court also found the Government's criteria legitimate and reasonable.

As to disclosing on the record what transpired in the *in camera* proceeding, the district court stated:

> The disclosure of the government's reasons for excluding the 19 jurors, including those black persons, would not, in the judgment of this Court, be meritorious. Moreover, this Court does not believe that the publication of the reasons, either in a summary fashion or in a very detailed fashion, such as the exposure and the recitation of the statements of counsel, in open court, would enhance the administration of justice. Of more importance, this Court does not believe that the interests of justice and the rights would be enhanced (sic). The same would be true of the rights of the defendants in this case.

## II.

### DISCUSSION

#### A. *In Camera Proceeding*

Each of the defendants contend that by holding the jury exclusion hearing *in camera* the district court violated their constitutional right to be present at trial. The defendants also contend that their right to be present at trial under Fed.R.Crim.P. 43 was violated.[3] The Supreme Court has noted that the right to presence at trial is largely derived from the Confrontation

---

**3.** Rule 43(a) of the Federal Rules of Criminal Procedure provides: (1) **Presence Required.** The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.


Clause of the Sixth Amendment. *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985); *see also, Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). However, the Supreme Court has extended the clauses's scope to some contexts which are not confrontational per se. *See Gagnon*, 470 U.S. at 526, 105 S.Ct. at 1484; *Faretta v. California*, 422 U.S. 806, 819, n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975).

In *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), the Supreme Court held that under the Fourteenth Amendment a defendant must be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." 291 U.S. at 105–106, 54 S.Ct. at 332–333. The *Snyder* Court continued, noting that "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.* at 107–108, 54 S.Ct. at 333. The Court noted further that a determination of the necessity of a defendant's presence required a careful weighing of the context of the proceeding, as provided by the whole record. *Id.* at 115, 54 S.Ct. at 336.

Here, the context was a hearing on alleged racial motivations behind the Government's exclusion of blacks from the jury. Both the Supreme Court and this circuit have spoken on the issue of racially motivated juror exclusion, *see, Batson v. Kentucky*, — U.S. —, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Booker v. Jabe*, 775 F.2d 762 (6th Cir.1985), *vacated and remanded* — U.S. —, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986). Neither court, however, has fashioned any procedural guidelines outside those articulating burdens of proof and persuasion for when these issues are resolved by the district court. Indeed, in *Batson* the Supreme Court expressly refrained from formulating procedures for hearings on this issue, justifying its reluctance to do so on the variety of jury selection practices followed in state and federal courts. — U.S. —, n. 24, 106 S.Ct. at

1724, n. 24. We decline, therefore, to issue a per se rule to be followed in this circuit whenever a *Batson* challenge arises. The concern of the Court in *Snyder* to craft a determination specific to the facts in the record, *see Snyder*, 291 U.S. at 115, 54 S.Ct. at 335, as well as the Court's reluctance in *Batson* to construct new procedures compel us to limit the extent of our analysis to this case alone.

■ That aside, the record of the proceedings in the district court simply does not indicate a situation where the presence of the defendants and their defense counsel was required to ensure fundamental fairness. Before the *in camera* hearing took place, defense counsel objected three times to the peremptory challenges of the Government. Each time the district court allowed both the Government and defense counsel to argue the issue. As a result, the defendants' position on the motivations of the Government in its peremptory challenges was zealously advanced by defense counsel and put before the district court. Moreover, the district court gave the defendants' arguments careful, even painstaking attention by constructing a procedure for determining whether there was a racial motivation for the Government's use of peremptory challenges. The defendants thus cannot be said to have been deprived of fundamental fairness or prejudiced by their absence from the *in camera* proceeding. Their presence both before and after the *in camera* proceeding achieved the desired result—serious treatment by the district court of their claim of racially motivated juror exclusion.

■ Furthermore, Judge Cook was prescient in that the burdens of proof and persuasion that he articulated for the resolution of the defendants' claims were almost identical to those later outlined by the Supreme Court in *Batson*. *Batson* requires that after a defendant has made a prima facie showing of purposeful discrimination in the selection of a jury, "the burden shifts to the State to come forward with a neutral explanation for challenging black

jurors", such explanation being related to "the particular case to be tried." — U.S. at ——, 106 S.Ct. at 1723. At that point in the process, the district court assumes the duty of determining if the defendant has established purposeful discrimination. — U.S. at ——, 106 S.Ct. at 1724. *Batson* does not require rebuttal of the Government's explanation by defense counsel. Nor does *Batson* require the participation of defense counsel while the Government's explanations are being proffered. This is not to say that rebuttal and participation by a defendant in the "neutral explanation" phase of a *Batson* challenge are always inappropriate. To the contrary, the Supreme Court left it up to the trial court to determine what role defendants were to play once the Government proffered its reasons for black juror exclusion.[4]

In light of the *Batson* Court's respect for judicial flexibility in this area, we must, therefore, disagree with the defendants' contention that their presence at the *in camera* proceeding was constitutionally compelled. Once the defendants had established a prima facie case of racial motivation sufficient for the district court to make an inquiry of the Government, there was nothing more defendants were required to do. Their participation was no longer necessary for the district court to make its determination. At that point, the district court was entitled to hear from the Government under whatever circumstances the district court felt appropriate.

We are similarly unpersuaded that Rule 43(a) of the Federal Rules of Criminal Procedure required the district court to put the Government's explanation on the record. While this circuit has recognized that Rule 43 is broader in its assertion of

the right of presence at trial than The Constitution, *see, United States v. Brown,* 571 F.2d 980, 986, n. 5 (6th Cir.1978), we have not found a violation of Rule 43 where, as here, defense counsel zealously defended the interests of their clients and no "reasonable possibility of prejudice" existed. *Brown,* 571 F.2d at 987 (quoting *United States v. Reynolds,* 489 F.2d 4, 8 (6th Cir.1973), *cert. denied,* 416 U.S. 988, 94 S.Ct. 2395, 40 L.Ed.2d 766 (1974)). In addition, since we have found no prejudice resulting from the absence of defense counsel and have closely examined the transcript of the *in camera* proceeding, any error under Rule 43(a) can be deemed harmless under Rule 52(a) of the Federal Rules of Criminal Procedure.[5] *Brown,* 571 F.2d at 987; *see also, United States v. Lyon,* 567 F.2d 777, 783 (8th Cir.1977), *cert. denied,* 435 U.S. 918, 98 S.Ct. 1476, 55 L.Ed.2d 510 (1978); 3A C. Wright, Federal Practice and Procedure § 721.1 (1982).[6]

B. *Racially Motivated Juror Exclusion*

The defendants also contend that the district court erred in finding no racial motivation in the Government's exclusion of black jurors from the venire panel. We disagree. When a district court is presented with a motion for mistrial based on racially motivated juror exclusion, it must determine if the moving party has made a prima facie showing of discrimination. *Booker,* 775 F.2d at 773. In deciding whether the moving party has made the requisite showing, the trial court must consider all the relevant circumstances. *Batson,* — U.S. at ——, 106 S.Ct. at 1723. If the showing is made, the trial court then must undertake a "factual inquiry" which "takes into account all possible explanatory

---

**4.** The *Batson* court expressed no view on appropriate procedures and expressly declined to formulate any such procedures. ——, U.S. at ——, n. 24, 106 S.Ct. at 1724, n. 24.

**5.** Rule 52(a) of the Federal Rules of Criminal Procedure provides: (a) **Harmless Error.** Any error, defect, irregularity or variance which *does not affect substantial rights shall be disregarded.* (emphasis added).

**6.** Note that this proposition supports the earlier conclusion that the defendants' constitutional rights to presence at trial have not been violated. If the defendants cannot assert protection under the ambit of Fed.R.Crim.P. 43(a), they certainly cannot claim the narrower protection of the Confrontation Clause and the Fourteenth Amendment. *Brown, supra.*

factors" in the particular case. *Batson,* — U.S. at ——, 106 S.Ct. at 1722 (citing *Alexander v. Louisiana,* 405 U.S. 625, 630, 92 S.Ct. 1221, 1225, 31 L.Ed.2d 536 (1972)). The inquiry requires the party opposing the motion to submit neutral, non-discriminatory explanations for the exclusion of black jurors. *Id.* —— U.S. ——, 106 S.Ct. at 1723. The trial court then makes a factual finding.

■ A review of the records of both the *in camera* proceeding and the hearing in court reveal that the district court followed the above procedure. The record also indicates that the district court carefully reviewed the reasons given by the Government and found facts to support the conclusion that the Government was not using peremptory challenges to discriminate against black venirepersons. Though we are not at liberty to disclose the reasons offered, we are satisfied after an intensive review of the *in camera* transcript that the Government's reasons were applicable to black and white venirepersons alike. The district court was therefore correct in finding that the Government's peremptory challenges were nondiscriminatory and properly denied the motion for mistrial.

The various other grounds of appeal which the defendants raise are discussed below.

### C. *Sufficiency of the Evidence*

■ Defendant Duane Davis appeals his conviction on the ground that there was insufficient evidence to convict him on the charge of conducting a continuing criminal enterprise. The pertinent continuing criminal enterprise statute, 21 U.S.C. § 848(b) provides:

[A] person is engaged in a continuing criminal enterprise if—

(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

This circuit in *United States v. Gallo,* 763 F.2d 1504 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986), has laid out the standard for claims of insufficient evidence in continuing criminal enterprise convictions:

In addressing the sufficiency of the evidence, this Court does not sit as a trier of fact in a de novo trial. Rather, the standard of review for claims of insufficient evidence is: whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

763 F.2d at 1518, (quoting *Jackson v. Virginia,* 443 U.S. 307, 379, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Circumstantial evidence and the uncorroborated testimony of an accomplice may be included in the court's assessment of the sufficiency of the evidence. *Id.*

■ It is undisputed that Duane Davis' felony convictions for possession with intent to distribute heroin, conspiracy to possess with intent to distribute heroin, distribution of heroin, and conspiracy to import heroin are sufficient "predicate offenses" under 21 U.S.C. § 848(b)(1). *See United States v. Schuster,* 769 F.2d 337, 345 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1210, 89 L.Ed.2d 322 (1986). It is also clear that as a matter of law Duane Davis was responsible for the series of illegal acts committed by his co-conspirators in furtherance of the continuing conspiracy, even though he may not have participated in the acts or had knowledge of them. *Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946); *Gallo,* 763 F.2d at 1519, n. 22; *United States v. Michel,* 588 F.2d 986, 999 (5th Cir.), *cert. denied* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). Duane

Davis' drug offenses were thus "part of a continuing series of violations" made up of the acts of his co-conspirators. *See* 21 U.S.C. § 848(b)(2).

█ The only remaining issue, then, is whether on the evidence a reasonable trier of fact could have found beyond a reasonable doubt that Duane Davis was in the position of an organizer or supervisor with respect to five other persons involved in the drug operation. *See* 21 U.S. § 848(b)(2)(A). Other circuits have spoken on how to define the concepts of supervision, organization and management with respect to 21 U.S.C. § 848. In *United States v. Bolts*, 558 F.2d 316, 320 (5th Cir.1977), *cert. denied*, 439 U.S. 898, 99 S.Ct. 262, 58 L.Ed.2d 246 (1978), it was established that personal contact was not necessary to prove the "organization, supervision and management" elements of § 848. Also, a person charged under § 848 need not be the sole "kingpin" in the organization. *See United States v. Lurz*, 666 F.2d 69, 80 (4th Cir.1981), *cert. denied* 459 U.S. 843, 103 S.Ct. 95, 74 L.Ed.2d 87 (1982); *see also United States v. Smith*, 690 F.2d 748 (9th Cir.1982), (unnecessary for Government to show that defendant worked with five persons at the same time), *cert. denied, sub. nom. Fisherman v. United States*, 460 U.S. 1041, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983).

> This circuit has noted that:
>
> [t]he relationship requirement in a § 848 case is flexible. The defendant's relationship with the five other individuals need not exist at the same moment. There can exist separate, individual relations with the five persons. And, the five individuals need not act at the same time.

*United States v. Sinito*, 723 F.2d 1250, 1261 (6th Cir.1983), *cert. denied*, 469 U.S. 817, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984) (citations omitted).

█ We conclude that a rational trier of fact could have found beyond a reasonable doubt that Duane Davis coordinated the activities of his wife, Alicia Davis, Cynthia High [a courier], Howard Ransom [the contact in the Netherlands], and his brothers Kenneth Davis and Reginald "Doc" Davis. These five persons were coordinated by Duane Davis towards the goal of transporting heroin from the Netherlands to the Davis family for sale and distribution. Government witnesses testified that Duane Davis arranged for Cynthia High's travel to Amsterdam, provided money for her expenses and supplied the money for Ransom. Davis also gave High a list of names and addresses. The evidence shows that Duane Davis had contacted Ransom in the Netherlands to set up a importing scheme for the rest of the organization. The heroin was delivered to Duane Davis' home and he took possession of it after delivery.

In summary, we do not find it unreasonable for a trier of fact to find that defendant Duane Davis coordinated the purchase and shipping aspects of the heroin ring, a process involving the management or supervision of at least the aforementioned five persons.

█ While we affirm Duane Davis' conviction for conducting a continuous criminal enterprise, his convictions and sentences for the predicate felony violations of the federal narcotics laws, to wit: (1) conspiracy to distribute and to possess with intent to distribute heroin, and (2) conspiracy to import heroin, cannot stand. The Government readily concedes in its appellate brief that *United States v. Schuster*, 769 F.2d 337 (6th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 1210, 89 L.Ed.2d 322 (1986), compels the conclusion that Congress did not intend continuous criminal enterprise and conspiracy charges to be subject to double punishment. *Schuster*, 769 F.2d at 344–45; *contra United States v. Oberski*, 734 F.2d 1030 (5th Cir.1984) *cert. denied*, 469 U.S. 1113, 105 S.Ct. 797, 83 L.Ed.2d 790 (1985) (where there is more than one predicate or lesser included offense, the offenses not relied upon to establish the continuing criminal enterprise offense may support separate convictions and sentences).

Accordingly, we remand the case with instructions to the district court to dismiss Duane Davis' conspiracy convictions. *Schuster* also compels us, however, to affirm Duane Davis' conviction on the count charging him with possession with intent to distribute. Since that count is a substantive offense, it does not subject Davis to cumulative punishment. 769 F.2d at 345, (citing *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985)).

 Kenneth Davis appeals his conviction on the heroin importation conspiracy count, also on the ground of insufficient evidence. We find ample evidence to convict him of conspiracy. In *United States v. Hamilton,* 689 F.2d 1262 (6th Cir.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983), this court determined that "[o]nce the existence of a conspiracy has been established, only slight additional evidence is required to connect a particular defendant with it." *Hamilton,* 689 F.2d at 1275 (quoting *United States v. Smith,* 561 F.2d 8, 12 (6th Cir.1977), *cert. denied,* 434 U.S. 958, 972, 1019, 1048, 98 S.Ct. 487, 524, 741, 897, 54 L.Ed.2d 317 (1977)). Even circumstantial evidence is sufficient to support a conviction for conspiracy. *Id.* The record shows that Kenneth Davis had promised to describe to an undercover agent how his heroin smuggling organization operated and had indicated what color (brown) the smuggled heroin would be before the organization's heroin shipment was seized by the federal authorities seven months later. Kenneth Davis also had sold heroin to three undercover agents of the Drug Enforcement Administration. We conclude, therefore, that the weight of this and other evidence is more than substantial to convict Kenneth Davis of conspiracy to import heroin.

### D. *Double Jeopardy*

Howard Ransom and Kenneth Davis claim that their convictions on the two conspiracy counts of distribution and importation violate their rights against double jeopardy. In sum, they claim that because the acts of importation and distribution are identical for both conspiracies and are based upon the same evidence and agreement, they should not have been convicted for both conspiracy to distribute and conspiracy to import. They contend that to do so violates the double jeopardy clause. We disagree. The Supreme Court considered this issue in *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). In *Albernaz,* defendants were convicted on separate counts of conspiracy to distribute marijuana, in violation of 21 U.S.C. § 846 and conspiracy to import marijuana, in violation of 21 U.S.C. § 963. The basis for both convictions was a single agreement. The *Albernaz* Court noted what it called the *Blockburger* test:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Albernaz,* 450 U.S. at 337, 101 S.Ct. at 1141, (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). The Court noted further:

> The fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is difficult to combat does it not make the several different regulatory controls single and identic.

450 U.S. at 338, 101 S.Ct. at 1142 (quoting *Gore v. United States,* 357 U.S. 386, 389, 78 S.Ct. 1280, 1282, 2 L.Ed.2d 1405 (1953)). The *Albernaz* Court concluded that "[s]ections 846 and 963 specify different ends as the proscribed object of the conspiracy—distribution as opposed to importation—and it is beyond peradventure that each provision requires proof of a fact [that] the other does not.'" 450 U.S. at 339, 101 S.Ct. at 1142.

 We think the *Albernaz* holding is applicable here. The heroin importation offense and the heroin distribution offense with which Davis and Ransom were

charged require proof of different facts. Consecutive convictions and sentences for each offense, therefore, do not violate the defendants' rights against double jeopardy. *Blockburger*, 248 U.S. at 304, 52 S.Ct. at 182; *accord, United States v. Sutton*, 700 F.2d 1078 (6th Cir.1983).

 Defendant Kenneth Davis claims his rights against double jeopardy were violated when evidence of prior narcotics sales and narcotics-related telephone conversations was introduced at trial. At a previous trial, Davis had been acquitted of illegal narcotics distribution and the use of a telecommunications facility for illegal drug-related activity. His defense was entrapment. It is an established principle that the double jeopardy clause prevents a person from being put in jeopardy twice of the same offense. *Pinkerton v. United States*, 328 U.S. 640, 644, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946). Double jeopardy does not prevent, however, prior acquitted conduct from being used as evidence in a subsequent trial if the conduct is probative under the Federal Rules of Evidence.[7] *See United States v. Johnson*, 697 F.2d 735, 738–39 (6th Cir.1983). Collateral estoppel prevents the use of the prior acquitted conduct only if the legal or federal issue regarding the conduct is identical to the issue in the first trial *and* was decided in the defendant's favor. *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir.1979), *cert. denied*, 444 U.S. 877, 100 S.Ct. 162, 62 L.Ed.2d 105 (1979); *Johnson*, 697 F.2d at 740.

 Defendant Davis falls afoul of the second requirement. In his first trial, he was acquitted not because he did not distribute heroin, but rather because the necessary criminal intent was vitiated by an entrapment defense. The jury decided, therefore, that though Davis committed the acts necessary for criminal liability, he was innocent of wrongdoing. At the second trial, the Government was not attempting to prove guilt from the acts, but rather introduced the prior acts for the purpose of satisfying the overt act element of the conspiracy charge. Overt acts need not be illegal or criminal. *Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942). We find, therefore, that the jury's finding of innocence on the first trial's substantive charges did not prevent the second trial jury from evaluating the prior acts as part of a conspiracy charge. The two issues are not identical and Kenneth Davis' rights against double jeopardy were thus not violated.

### E. *Statements by Co-Conspirators*

 Howard Ransom and Kenneth Davis contend that the trial court erred in admitting the out-of-court statements of their co-conspirators. Ransom argues that because the co-conspirators' statements were made before the time Ransom was established by direct evidence to be a member of the conspiracy, the statements were inadmissible as a matter of law. Davis asserts that since the Government had failed to prove he was a member of the importation conspiracy, there was no basis at law to admit his co-conspirators' statements. We have already concluded that there indeed was sufficient evidence to prove that Davis was a member of the importation conspiracy.[8] Furthermore, the trial court admitted the co-conspirators' statements against Davis because it found the Government had established by a preponderance of independent evidence the existence and furtherance of a conspiracy. As such, the admission of the co-conspirators' statements against Davis was not error. *See* Fed.R.Evid. 801(d)(2)(E).

 We similarly reject Ransom's contention of insufficient evidence to convict. In *United States v. Cassity*, 631 F.2d 461 (6th Cir.1980), *vacated on other grounds*, 468 U.S. 1212, 104 S.Ct. 3581, 82 L.Ed.2d 879 (1984), this circuit stated the relevant law as follows:

> ... [T]he declarations and acts of the various members, even though made or

---

**7.** *See* Federal Rule of Evidence 404(b).

**8.** *See supra*, p. 1204.

done prior to the adherence of some to the conspiracy, become admissible against all as declarations or acts of co-conspirators in aid of the conspiracy. 631 F.2d at 464 (*quoting United States v. U.S. Gypsum Company*, 333 U.S. 364, 393, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). Assuming *arguendo* that Ransom is correct in contending that his co-conspirator's statements were made before he entered the conspiracy, we are nevertheless bound by *U.S. Gypsum Company* to affirm the trial court's admission of the statements.

### F. *Improper Joinder*

Three of the four defendants contend that the trial court erred in denying their motion for severance. Defendant Duane Davis argues that he was prejudiced by the "voluminous testimony" involving the other defendants. Kenneth Davis contends he was only involved in the distribution of small amounts of heroin to "a single person." Defendant Ransom asserts that even if he was involved in the importation conspiracy, he did not supply the heroin sold by Kenneth Davis to a DEA undercover agent. None of the defendants have indicated specific instances where the jury was confused or unable to limit the evidence to one defendant.

 Rule 8(a) and (b) of the Federal Rules of Criminal Procedure governs the propriety of charging two or more offenses and joining two or more defendants in a single indictment. Fed.R.Crim.P. 14 allows relief from misjoinder of offenses or of defendants when a party is prejudiced thereby.

This court may reverse the district court's denial of a Rule 14 motion for severance only for an abuse of discretion. *Gallo*, 763 F.2d at 1525, *United States v. Dempsey*, 733 F.2d 392, 398 (6th Cir.1984), *cert. denied*, 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed.2d 323 (1984); *United States v. Markey*, 693 F.2d 594, 597 (6th Cir.1982). Moreover, the general rule is that parties who are jointly indicted should be tried together. *Dempsey*, 733 F.2d at 398. In order to escape the general rule, the de-

fendant must carry the "heavy burden of showing specific and compelling prejudice resulting from a joint trial which can be rectified only by separate trials." *Id*; *United States v. Pickett*, 746 F.2d 1129, 1134 (6th Cir.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985). The Supreme Court has held in *United States v. Lane*, ── U.S. ──, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), that even if there is misjoinder under Rule 8, the error requires reversal only "if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *Lane*, ── U.S. at ──, 106 S.Ct. at 732. Otherwise, where there is "overwhelming evidence of guilt", the claimed error is harmless. *Id*. Another factor we must consider is that even if the defendants establish a harmful effect on the jury, this must be balanced against the need for speedy and efficient trials. *Gallo*, 763 F.2d at 1525; *United States v. Scaife*, 749 F.2d 338 (6th Cir.1984).

 Our review satisfies us that the district court did not err in denying the defendants' motion for severance. First, the evidence shows that at all times the defendants were "conducting a regular business on a steady basis" within a "loose knit organization" for the purpose of importing and distributing heroin. *See United States v. Grunsfeld*, 558 F.2d 1231, 1238 (6th Cir.1977), *cert. denied*, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978). Second, defendant Duane Davis has failed to show prejudice or jury confusion resulting from the allegedly "voluminous testimony" and evidence against the other appellants. The volume or inflammatory nature of the evidence, by itself, does not show substantial prejudice. *Gallo*, 763 F.2d at 1525. Third, even though Kenneth Davis and Howard Ransom claim minimal involvement in the conspiracies, they have not met the "heavy burden of showing specific and compelling prejudice" as a result of their joinder with the other defendants. *Lane*, ── U.S. at ──, 106 S.Ct. at 732; *Grunsfeld*, 558 F.2d at 1238.

Finally, the fact that the conspiracy charges involved the same conspiracy as well as the same acts and agreement leads us to conclude that society's interest in judicial efficiency was well served by joinder. This is particularly true since the trial in the district court lasted eight weeks. One can only speculate on the greater amount of time and judicial resources expended if defendants' trial was severed. Severed trials mean multiple juries, congested trial dockets and overall inconvenience to both citizen and court. Fed.R. Crim.P. 8(a), (b) was intended as a remedy to this problem. We should not contravene the considered purpose of the federal rules absent proven substantial prejudice to the defendants.

### G. *Suppression of Evidence*

■ Duane Davis claims that the cannisters taken as evidence from his jeep at the point of his arrest in August 1982 were seized in a warrantless search of his vehicle without probable cause. His claim is without merit. Davis entered his home after the Government informant made a pre-arranged delivery of fake heroin under the instruction and surveillance of federal agents. He left the house wearing a coat which, according to the DEA agents, led to a suspicion that the cannisters were underneath the coat. DEA agents already had information about his criminal activities as well as a valid search warrant. On these facts, we find that there was sufficient probable cause for Davis' warrantless arrest. *See United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). When Davis was stopped in his vehicle, the cannisters of heroin were in the plain view of the arresting agent and were seized in a lawful search of the jeep incident to Davis' arrest. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981).

■ Howard Ransom's claim that the trial court erred in failing to suppress some post-arrest statements is also without merit.[9] First, counsel for Ransom failed to file a timely pretrial motion to suppress the statement and thus waived his objection under Fed.R.Cr.P. 12(b)(3), 12(f). Second, our review confirms that Ransom's waiver of his right to have an attorney present during the questioning at that time was knowingly and intelligently waived. In *United States v. Dority,* 487 F.2d 846, 848 (6th Cir.1973), this circuit held that interviewing a defendant outside of the presence of counsel is constitutional if the right to counsel is knowingly and intelligently waived. In light of the above, we find that the district court did not err in refusing to exclude the post-arrest statements.

Duane Davis contends error on the same ground; that the trial court erred in failing to suppress his post-arrest statement. The district court judge found that Duane Davis was fully informed of his rights and waived them voluntarily. The Government may establish valid waiver by proving by a preponderance of the evidence that a defendant has knowingly and intelligently waived his rights. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 627, 30 L.Ed.2d 618 (1972). Our review of the facts convinces us that Duane Davis knowingly and intelligently waived his Fifth and Sixth Amendment rights.[10] *See United States v.*

9. The facts of the issue are as follows: Before Ransom's initial appearance, a U.S. Magistrate ordered that he was not to be interviewed until counsel could be obtained to advise him of his rights. After Ransom consulted with an attorney, he was again advised of his rights by a DEA agent and was questioned briefly. No impairment or coercion was indicated nor did Ransom request counsel. The statements made during questioning were later admitted into evidence, save for a specific reference to an unindicted party.

10. The facts are as follows: Duane Davis was arrested, advised of his rights twice and stated that he understood them. He asked his girlfriend, who was present at the time of arrest, to call his mother and his attorney. He was transported to the federal building for processing. At no time did he request an attorney. Upon arrival, he was advised of his rights a third time and indicated that he understood. DEA agents testified that Davis had responded to questions about his real estate holdings. At the suppression hearing, Davis denied answering questions, claiming he had invoked his Fifth Amendment

*Woods,* 613 F.2d 629, 634 (6th Cir.1980), *cert. denied,* 446 U.S. 920, 100 S.Ct. 1856, 64 L.Ed.2d 275 (1980). We also agree with the district court's assessment of Duane Davis' testimony, especially given the fact that the district court judge, as trier of fact, was able to observe the credibility, demeanor and intelligence of the defendant.

### H. *Improper Limitation of Closing Argument*

 Howard Ransom argues that the district court erred by improperly limiting his closing argument and allowing the Government to improperly bolster the credibility of its main witness. We disagree. During closing argument, counsel for Ransom speculated as to what deal the Government had made or might have made with its major witness. The district court properly sustained the Government's objection that counsel's argument was based on facts not in evidence. As to the alleged error of allowing the Government to improperly bolster a witness' credibility, we note that the defense counsel failed to object to the comment at trial, thus waiving the issue for appeal. But even on the merits, this ground must fail. The comment to which defendant Ransom objects was made by the prosecuting attorney. The record shows that in making the remark the attorney was responding to defense counsel's earlier speculation about the Government witness' credibility. The Supreme Court has held that inappropriate prosecutorial comments, standing alone, do not justify a reversal of a criminal conviction, especially where, as here, the context involves a defense counsel's provocative "opening salvo". *See United States v. Young,* 470 U.S. 1, 18, 105 S.Ct. 1038, 1048, 84 L.Ed.2d 1 (1985). Substantial unfair prejudice also must be shown by the complaining defendant. Since Ransom does not show unfair prejudice due to the prosecutor's remarks, we find that the comments did not undermine the fundamental fairness of his trial. *Id.*

### 1. *Prejudicial Pre-Trial Publicity*

 Ransom for the first time raises a charge of prejudicial pretrial publicity due to a leak at the grand jury stage, over a year before jury selection in this case. The newspaper article which allegedly caused the prejudice is not in the record, nor was there filed a motion for change of venue. Ransom also failed to bring a motion to dismiss on this ground prior to or during trial. The issue is thus not preserved for appeal and is waived. Fed.R.Crim.P. 12.

### J. *Outrageous Conduct by the Government*

 Defendant Kenneth Davis alleges outrageous conduct by the Government when, in the undercover operation leading to his eventual arrest, Government agents gave Davis three dilaudid tablets in order to arrange an exchange of the pills for heroin. Davis failed to bring a motion to dismiss on this ground prior to or during trial. The appellate issue is thus waived. *See* Fed.R.Crim.P. 12, *see also United States v. Worthington,* 698 F.2d 820, 824 (6th Cir.1983), *cert. denied,* 469 U.S. 827, 105 S.Ct. 109, 83 L.Ed.2d 53 (1984). On the merits, however, this circuit has found that where there is a need to penetrate secret drug-related organizations, the Government is granted considerable latitude in its undercover activity. That latitude carries over to the judicial review of a claim of outrageous Government conduct. *See United States v. Brown,* 635 F.2d 1207, 1212–13 (6th Cir.1980); *United States v. Robinson,* 763 F.2d 778, 785 (6th Cir.1985). In this instance, the Government successfully used a controlled substance to gain the confidence of a major participant in a heroin ring. Under those circumstances, we cannot find that the offer of the dilaudid constituted outrageous Government conduct.

### K. *Prejudicial Evidence*

Defendants Alicia Davis and Howard Ransom claim additional error in the dis-

right to silence. They alleged that Davis said his brother Reginald Davis had invested $600,000 in real estate but that the deals had soured because of ongoing federal investigations.

trict court's admission of certain evidence. The evidence concerned the steps taken by federal agents to ensure the reliability of Cynthia High, a Davis organization drug courier, just prior to the time she was to deliver cannisters of fake heroin to Detroit as part of the Government's investigation and eventual arrest of the defendants. The evidence in question detailed how the Government reviewed Ms. High's activities as a drug courier at the time she was arrested at an airport. It was admitted to prove that federal agents had corroborated her courier activities in order to make sure she would be a reliable Government informant. The defendants moved for mistrial on the grounds that testimony regarding Ms. High's courier activities, brought out in the course of testimony as to her reliability as an informant, unfairly prejudiced the jury against the defendants.

 This court may overturn the trial court's ruling only if, viewed in a light most favorable to the Government, the decision was an abuse of discretion. *United States v. Holloway,* 740 F.2d 1373, 1378 (6th Cir.), *cert. denied,* 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984). In that light, we find that the evidence introduced by the Government was proper rebuttal evidence of what the defendants had been attempting to prove earlier in the trial: that the Government's methods of assessing the credibility and reliability of Ms. High were inadequate. Because the defendants had initially raised the issue, we cannot find that the trial court abused its discretion in admitting the Government's evidence, nor do we find prejudice arising from the admission of the evidence.

### L. *Miscellaneous*

 Defendant Duane Davis raises other issues on appeal. First, he contends that a post-arraignment meeting between a certain Government informant and himself, without counsel, requires the indictment to be dismissed. The statements made by Davis during that meeting concerned a different drug investigation and were not even introduced at trial.

 Second, Davis argues that he was substantially prejudiced by the imposition of a Rule 16 protective order on a hotel receipt. The receipt was evidence of a trip Davis made to meet with the Amsterdam heroin contact, Howard Ransom, and discuss drug trafficking. Since Davis has failed to demonstrate substantial prejudice, the argument is without merit, as is his argument that the district court improperly admitted his passport. Finally, Davis contends that a one year preindictment delay was prejudice and therefore grounds for the district court to dismiss the indictment. Again, since Davis fails to demonstrate prejudice, we find his claim meritless.

### III.

### *CONCLUSION*

Based on the foregoing, the case is RE-MANDED to the district court with instructions to vacate Duane Davis' conviction for conspiracy to distribute and to possess heroin with intent to distribute and conspiracy to import heroin. In all other respects, the decisions by Judge Cook and the convictions of all four defendants are AFFIRMED.