911 F.2d 734
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lawrence CHIARIELLO, Defendant-Appellant.
 No. 89-1757.
 United States Court of Appeals, Sixth Circuit.
 Aug. 13, 1990.
 
 Before KEITH and RALPH B. GUY, Jr., Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant Lawrence Chiariello ("defendant") appeals from the district court's June 6, 1989 judgment and commitment orders finding him guilty of wire fraud and conspiracy to commit wire fraud. For the reasons set forth below, we AFFIRM.
 
 I.
 A.
 
 2
 On October 14, 1988, defendant was indicted on sixty-two (62) counts of fraud by wire, in violation of 18 U.S.C. 1343, and one (1) count of conspiracy to commit fraud by wire, in violation of 18 U.S.C. 371. From March 20 through March 23, 1989, defendant was tried before a jury. Before the close of proofs, defendant moved for a judgment of acquittal on fifty-four (54) of the wire fraud counts. See Fed.R.Crim.P. 29. The United States voluntarily dismissed those fifty-four (54) counts. On March 23, 1989, the jury returned a guilty verdict on eight (8) counts of wire fraud and one (1) count of conspiracy to commit wire fraud. On June 6, 1989, the district court sentenced defendant to twenty-seven (27) months imprisonment and a $50 special assessment on each of the nine (9) counts, with the prison terms to be served concurrently. Defendant filed a timely notice of appeal on June 12, 1989.
 
 B.
 
 3
 William Spencer, Sr. ("Mr. Spencer"), is a dairy farmer, who has lived in rural Michigan since 1927. In 1964, his youngest son, Richard Spencer ("Richard"), left the family farm and moved to California. In the years since, Richard traveled to the family farm approximately four times, on occasion in the company of defendant.
 
 
 4
 Although Richard seldom visited his father, Mr. Spencer often received telephone calls from people who claimed to have information about Richard: a little boy named "Raymond" (said to be Richard's son and Mr. Spencer's grandson); a doctor from Phoenix named "Dr. Pullmor"; an ambulance driver named "Don Haskell"; and a priest named "Father Norman." These people told Mr. Spencer that Richard was sick; had severe diabetes; had to have his foot and two fingers amputated; or had other emergencies requiring large amounts of money. Mr. Spencer responded by sending Richard money by Western Union in excess of one hundred (100) times. Mr. Spencer sold off half of his family farm and borrowed $30,000 to pay for these wire transfers.
 
 
 5
 In 1988, Mr. Spencer wrote four checks to pay for wire transfers to Richard. When the four checks were returned by Mr. Spencer's bank for insufficient funds, his son, Bernard Spencer ("Bernard"), secured power of attorney over Mr. Spencer's checking account and placed a tape recorder on Mr. Spencer's home telephone. After listening to the tapes of various "callers" reporting Richard's and "Raymond's" emergencies and requesting monies on their behalf, Bernard realized that the calls were being placed by the same person. Bernard then contacted the local sheriff and the Federal Bureau of Investigation (the "FBI").
 
 
 6
 During February 1988, Mr. Spencer received a call stating that Richard and "Raymond" desperately needed money to have Richard transferred by ambulance to a hospital in Michigan. After Mr. Spencer begged Bernard to send Richard the money, Bernard, acting under the direction of the FBI, wired $500 to Richard on February 18, 1988. Later that day, FBI Agent Cal Sieg ("Agent Sieg") observed Richard at a Western Union terminal in Las Cruces, New Mexico, and arrested him on a federal warrant from Michigan issued on charges of wire fraud. Richard plead guilty to a charge of conspiracy to commit wire fraud and admitted that he had conspired with defendant.
 
 
 7
 Defendant was arrested in Deming, New Mexico on February 19, 1988. Agent Sieg made a recording of a telephone call to defendant; compared that voice recording to the voice recordings received at the family farm; and identified defendant as the voice of "Dr. Pullmor," "Don Haskell," "Father Norman" and the other "callers" who solicited money from Mr. Spencer. Agent Sieg's recorded telephone call to defendant and the recorded telephone calls allegedly from defendant to Mr. Spencer were introduced into evidence at trial.
 
 II.
 
 8
 On appeal, defendant does not deny that there was sufficient evidence to support the jury's verdict that he conspired with Richard to obtain money from Mr. Spencer by wire fraud. Defendant argues, however, that since some of the wire transfers from Mr. Spencer to Richard were honest transfers which defendant did not cause, and because the fraudulent transfers cannot be distinguished from the honest transfers, there is insufficient evidence to support the jury's verdict finding defendant guilty on the substantive wire fraud counts. The United States responds that there is sufficient evidence to support defendant's conviction on the substantive wire fraud counts. We agree.
 
 
 9
 In reviewing defendant's appeal, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 10
 A defendant may be held liable for each of his co-conspirator's substantive offenses committed in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 646-47 (1946). A defendant may also be held responsible for a series of illegal acts committed by his co-conspirators in furtherance of a continuing conspiracy, even if the defendant did not participate in the acts or have knowledge of them. See United States v. Davis, 809 F.2d 1194, 1203 (6th Cir.1987).
 
 
 11
 In the case at bar, defendant argues that he should not be held responsible for those fraudulent wire transfers from Mr. Spencer to Richard which were solely engineered by Richard. The law, however, holds defendant responsible for the acts of Richard, his co-conspirator in the continuing conspiracy to defraud Mr. Spencer. See Pinkerton, 328 U.S. at 647. Assuming, arguendo, that defendant actually did not know of some of Richard's independent acts of defrauding Mr. Spencer, defendant was still properly held liable for Richard's acts of wire fraud committed in furtherance of the conspiracy to which they both agreed. See Davis, 809 F.2d at 1203.
 
 
 12
 Defendant also contends that he should not be held liable for those wire transfers from Mr. Spencer to Richard that were motivated by Richard's genuine financial needs. At trial, Richard testified that there were times when he truthfully had minor problems with the law, such as traffic tickets, and needed financial assistance from his father to stay out of jail. Even if the jury had credited Richard's testimony, however, it still could have reasonably concluded that the most recent wire transfers charged in the remaining substantive wire fraud counts were not induced by honest representations. At trial, the jury heard the calls recorded from Mr. Spencer's telephone that requested funds for Richard's and "Raymond's" "medical emergencies," but did not hear recorded requests for funds to cover "traffic tickets." In addition, Mr. Spencer testified that he made the most recent wire transfers, ranging in size from $300 to $2250, because he believed that Richard was in the hospital and required the funds to pay for medical care. Because these amounts were too large to be explained as "traffic ticket" fines, and since Richard did not require hospitalization for any illness upon arrest, it was reasonable for the jury to find, beyond a reasonable doubt, that the wire transfers memorialized in the remaining eight (8) counts were induced by fraudulent representations by the co-conspirators, defendant and Richard.
 
 
 13
 We are persuaded that the jury's verdicts finding defendant guilty of wire fraud and conspiracy to commit wire fraud are supported by sufficient evidence to sustain his convictions. Accordingly, we AFFIRM the judgment and commitment orders of the Honorable Stewart A. Newblatt, United States District Court for the Eastern District of Michigan.