919 F.2d 734
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Brian LUTZ, Defendant-Appellant.
 No. 90-5780.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 5, 1990.
Decided Dec. 10, 1990.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, District Judge. (CR-89-146-HAR)
 Stephen Jon Cribari, Deputy Federal Public Defender, Baltimore, Md. (Argued), for appellant; Fred Warren Bennett, Federal Public Defender, Michael T. Citaramanis, Assistant Federal Public Defender, Baltimore, Md., on brief.
 Andrew George Warrens Norman, Assistant United States Attorney, Organized Crime Drug Enforcement Task Force, Baltimore, Md. (Argued), for appellee; Breckinridge L. Willcox, United States Attorney, Organized Crime Drug Enforcement Task Force, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before PHILLIPS and WILKINSON, Circuit Judges, and SAMUEL GRAYSON WILSON, United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellant contests a role-in-the-offense adjustment to his offense level under Sec. 3B1.1(c) of the Sentencing Guidelines. We affirm the trial court's judgment.
 
 I.
 
 2
 During the month of July 1988, Jeffrey Boblooch was in the Baltimore, Maryland, area and visited his acquaintance Robert Lutz. Boblooch and Lutz had previously worked together to distribute cocaine. During Boblooch's visit to Baltimore, he drove Lutz to the airport to catch a flight. Gregory Curry was also in the car with Boblooch and Lutz. On the way to the airport, Curry and Lutz allegedly discussed their plan to purchase a kilogram of cocaine the following day. Curry explained to Boblooch that the previous night he and Lutz had obtained money from Anthony Bakie to finance the cocaine purchase.
 
 
 3
 Shortly after this conversation, Boblooch became a government informant. In this capacity, Boblooch arranged with Lutz to engage in a series of multi-kilogram cocaine transactions. The proceeds from these transactions were to be used to satisfy a debt Boblooch owed Lutz. Lutz and Boblooch agreed that Curry would act as Lutz's agent in these transactions. On April 3, 1989, Special Agent David Miller of the United States Drug Enforcement Administration ("DEA") met with Boblooch and Curry to discuss arrangements for a two kilogram cocaine deal. On April 6, 1989, Agent Miller met with Curry at a prearranged location in Baltimore County, Maryland, and sold two kilograms of cocaine to Curry in return for $17,000 in cash and a promise to pay another $17,000. DEA agents arrested Curry after he concluded the transaction.
 
 
 4
 On April 20, 1989, Bakie, Curry, and appellant Lutz were indicted for conspiracy to distribute and to possess with intent to distribute in excess of 500 grams of cocaine, in violation of 21 U.S.C. Sec. 846 (1988), and possession with intent to distribute in excess of 500 grams of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) (1988). On October 3, 1989, Lutz pleaded guilty to the conspiracy count. At Lutz's sentencing hearing on February 16, 1990, the court determined that Lutz was an organizer, leader, manager, or supervisor under the United States Sentencing Commission Guidelines, 18 U.S.C. Appendix Sec. 3B1.1(c) (1989).* The court accordingly increased Lutz's offense level by two and sentenced him to 108 months in prison. Lutz now appeals the upward adjustment.
 
 II.
 
 5
 Appellant argues the evidence presented to the sentencing court was insufficient to establish that he was an organizer, leader, manager, or supervisor under Sec. 3B1.1(c). We review this claim under a clearly erroneous standard. See 18 U.S.C.A. Sec. 3742(e) (1989); United States v. White, 875 F.2d 427, 430-31 (4th Cir.1989).
 
 
 6
 Much of the evidence on Lutz's role in the offense came from Curry, his co-conspirator. When Curry pleaded guilty, he signed a statement of facts outlining the government's case against him. This statement of facts, which was then introduced at Lutz's sentencing, revealed that Curry had acted as a "runner" for Lutz during the April 6 transaction so that Lutz would not become personally involved. Curry acknowledged that Lutz wanted to avoid personal involvement because Lutz was on bail and awaiting trial in Florida on another drug charge. The sentencing court found it "very important" that Lutz organized the transaction in an attempt to avoid jeopardizing his eligibility for bail on the Florida charge. This evidence reveals the relative importance of Curry and Lutz to the transaction: Curry was an underling who would take the risks while Lutz was the leader who would be shielded from responsibility.
 
 
 7
 In addition, evidence of Lutz's role as organizer under Sec. 3B1.1(c) emerges from two recorded conversations the government introduced at sentencing. According to the sentencing court, the first conversation, between Boblooch and Lutz, revealed Lutz "thinking out" how he would structure the April 6 transaction. After Lutz formulated the plan, he stated he would tell Curry how to perform the money for drugs exchange. In the second conversation, between Boblooch and Curry, Curry said, "I don't even know why he's [Lutz] sending me to go with ya." In addition, Curry stated, "I don't make any arrangements." The sentencing court found it "striking" that Curry had to approach Lutz to consummate the transaction.
 
 
 8
 Finally, Boblooch owed Lutz approximately $96,000. In our view, the sentencing court could reasonably infer that one who is owed a sum as large as $96,000 would assume a leadership role in a conspiracy organized for the purpose of repaying the debt. Lutz certainly had an interest in taking an active role in structuring the transactions to ensure he would be repaid.
 
 
 9
 This review of the evidence undermines appellant's characterization of his role as simply that of a "go-between." Even if appellant had correctly characterized his role, we note that courts have held that a middleman who facilitated a crime can be classified as an organizer or supervisor. See, e.g., United States v. Barreto, 871 F.2d 511, 512 (5th Cir.1989); United States v. Davis, 809 F.2d 1194, 1204 (6th Cir.1987).
 
 
 10
 In sum, substantial evidence supports the sentencing court's finding on appellant's role in the offense. Thus, the finding is not clearly erroneous.
 
 III.
 
 11
 Appellant also argues that the court below incorrectly applied Sec. 3B1.1(c) because it limited its examination of appellant's role in the offense to the April 6 transaction. Appellant notes that he pleaded guilty to a conspiracy which occurred between July 1988 and April 6, 1989. According to appellant, the sentencing court erred by focusing solely on the April 6 transaction instead of examining appellant's role throughout the conspiracy.
 
 
 12
 We believe, however, that the sentencing court did not limit its review of the evidence to the April 6 transaction. At sentencing, for example, appellant's counsel encouraged the court to focus on certain aspects of the April 6 deal. Instead, the court stated that it must look beyond the April 6 transaction to examine the "total picture," "all the facts." Furthermore, the district court mentioned that it agreed with the pre-sentence report and adopted its findings and conclusions. The pre-sentence report depicts Lutz managing an ongoing enterprise, not a simple one-shot deal. For instance, the report describes appellant's role in a "scheme of events," "deals," and "transactions." This review of the sentencing procedure demonstrates that the court examined Lutz's role in the entire conspiracy, not just the April 6 transaction.
 
 
 13
 Moreover, an inquiry emphasizing the April 6 transaction would not run afoul of the Guidelines. A series of acts and actors combine to form a conspiracy. Actors often join and leave a conspiracy as well as change roles throughout its existence. Given the nature of a conspiracy, a person could assume the mantle of leader or manager for one transaction but not for another. See 18 U.S.C. Appendix Sec. 3B1.1, comment. (n. 3).
 
 
 14
 The fluidity of a conspiracy can also make it difficult for a sentencing court to assess a defendant's role in the entire conspiracy. As a result, a sentencing judge may, under appropriate circumstances, focus upon a single transaction as representative of the larger conspiracy. Here, the April 6 transaction was the most significant transaction of the conspiracy and it was scheduled as the first of multiple transactions. Moreover, the evidence on this transaction was ample and reliable and the sentencing judge did not err in emphasizing it.
 
 
 15
 For the foregoing reasons, the judgment of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 *
 Title 18 U.S.C. Appendix section 3B1.1 (entitled "Aggravating Role") states that, based on the defendant's role in the offense, the offense level should be increased as follows:
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.