**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Paul David JOHNSON, Paul D. Kidd, Defendants-Appellants.**

**Nos. 81–5427, 81–5428.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1982.

Decided Jan. 14, 1983.

---

Joseph L. Famularo, U.S. Atty., C. Cleveland Gambill, Asst. U.S. Atty., Lexington, Ky., for plaintiff-appellee.

Jim Early, Lexington, Ky., for defendant-appellant Johnson.

Kevin Charters, Jim Early, Lexington, Ky., for defendant-appellant Kidd.

Before ENGEL and CONTIE, Circuit Judges, and HOGAN,* Senior District Judge.

TIMOTHY S. HOGAN, Senior District Judge.

This is an appeal by defendants-appellants Paul D. Johnson and Paul Duane Kidd from a judgment of conviction on five counts of an eight count indictment returned by the grand jury of the Eastern District of Kentucky on February 2, 1981. The indictment charged the defendants with engaging in illegal counterfeiting activities in December, 1980 and January, 1981, in violation of 18 U.S.C. §§ 371, 471, 472, 473, and 474.

In November, 1980 defendants-appellants Johnson and Kidd, among others, were tried on an earlier indictment charging them with engaging in illegal counterfeiting between October, 1979 and August of 1980. The jury acquitted Johnson and Kidd of all charges. Only Tommy Davidson, defendant-appellant Johnson's brother-in-law, was convicted.

At the trial on the February 2, 1981 indictment, the government introduced certain evidence, over defense objection, which was related to the activities charged in the first indictment. The defendants-appellants Johnson and Kidd here claim that the admission of the evidence in the second trial violated principles of collateral estoppel or, in the alternative, was contrary to Rules 404(b) and 403 of the Federal Rules of Evidence.

Subsequent to the November, 1980 trial on the first indictment, Secret Service

---

* The Honorable Timothy S. Hogan, Senior District Judge, United States District Court for the Southern District of Ohio, sitting by designation.

Agents Charles Potts and Harley Lempke received information that counterfeit money was available in Jackson, Kentucky. Acting on an informant's tip, Agent Potts, working undercover, contacted a person known as Chuck Spences and learned that a printing place and press were for sale.

Agent Potts then met with Junior Salyers, an acquaintance of Spencer. Agent Potts made preliminary arrangements for the purchase of $13 million in counterfeit $100 bills. Agent Lempke, also undercover, agreed to procure additional supplies necessary for the printing. Salyers and Spencer subsequently testified in the second trial that the "shopping list" of supplies was prepared by Johnson and Kidd. An expert also testified in the second trial that Johnson's fingerprint was identified on the list.

In January, 1981, Salyers and Spencer delivered thirty-four counterfeit $100 bills to the undercover agents as samples. The agents then tendered $3,000 in genuine $100 bills as an initial payment for the $13 million in counterfeit $100 bills ordered earlier. Prior to making this initial payment, the agents recorded the serial number of each bill tendered to Salyers and Spencer.

On January 9, 1981, Agent Lempke approached Salyers' house. While talking to Salyers at the door, Agent Lempke overheard a conversation which lead him to believe that the printing operation was in progress. Agent Lempke then alerted other law enforcement officials who then raided the house.

The agents found defendants-appellants Johnson and Kidd, a printing press loaded with an aluminum plate impression of a $100 bill, photographic negatives of currency, and other items associated with printing. The agents also discovered green ink on the hands of both Johnson and Kidd. In addition, agents discovered one of the recorded genuine $100 bills in defendant-appellant Johnson's wallet and two of the same bills in defendant-appellant Kidd's wallet.

In June, 1981, defendants-appellants were tried on the second indictment. The jury returned verdicts of guilty on five counts of the indictment. The District Judge imposed concurrent sentences of 5 years on each count upon both defendants.

## I.

On March 4, 1981 defendant Kidd filed a motion *in limine* requesting that the District Court inquire into the government's intent to introduce evidence relating to matters involved in the November, 1980 trial on the first indictment. On April 29, 1981 the District Court denied the motion *in limine* but directed the government to advise the Court of its intent to introduce such evidence. The District Court deferred ruling on the admissibility of the evidence until so advised.

After selection of the jury, but prior to its being sworn, defense counsel moved to add the name of Kevin Charters, defendant-appellant Johnson's counsel, to defendants' witness list. During voir dire, conducted by counsel and the District Judge in the jury's absence, Charters testified that while acting as counsel for Tommy Davidson in the November, 1980 trial on the first indictment, he witnessed certain proceedings which had a direct bearing on the defense of Johnson and Kidd in the cause on trial. In particular, Charters testified that at Tommy Davidson's sentencing, the District Judge told Davidson that if Johnson and Kidd cooperated with the Secret Service, the District Court would reconsider Davidson's sentence. Charters further testified that he relayed this information to both Johnson and Kidd.

The defendants argued that Charter's testimony was essential to prove their defense of lack of intent. Defendants Johnson and Kidd contended that they became involved in the printing scheme charged in the second indictment in order to infiltrate the counterfeiting ring, cooperate with the Secret Service, and thereby obtain reduction of Tommy Davidson's sentence. Defendants Johnson and Kidd asserted that they did not intend to counterfeit, but to cooperate with the Secret Service. After extensive voir dire, the District Court ruled that Charters could so testify.

Following that ruling, the jury was sworn in and opening statements were made. At the beginning of the government's case, the following stipulation was read to the jury and introduced as evidence:

The parties and their counsel agree and stipulate that the defendants Paul Kidd and Paul David Johnson were in November, 1980, defendants in a criminal case in the United States District Court at Pikeville, Kentucky, in which they were acquitted of charges involving violation of Federal counterfeiting laws.

Consistent with the District Court's pretrial ruling on defendants' motion *in limine,* the government, throughout the trial, notified the Court of its intention to introduce evidence of prior acts which the government had previously used against defendants Johnson and Kidd in the November trial that resulted in their acquittal. After such notice was given, and over defense objection, the government elicited on direct examination statements allegedly made by Junior Salyers which attributed the printing of the counterfeit bills involved in the November, 1980 trial to defendants Johnson and Kidd. Two witnesses testified that they purchased counterfeit bills from the defendants in 1980; another testified about a July, 1980 purchase of counterfeit bills from Tommy Davidson. Davidson was later allowed to confirm this sale. In addition, the Court permitted the government to cross-examine defendant Johnson about his alleged sales of counterfeit bills in July, 1980 and his alleged possession and distribution of counterfeit bills in the spring of 1980. Finally, a government agent testified that defendant Johnson's thumbprint was identified on one of the counterfeit bills sold in July, 1980. The District Judge, however, upon the reception of such evidence, in each instance carefully admonished the jury that this evidence could be considered only in determining the issues of absence of mistake or accident and intent.

Defendants seek reversal of their conviction on two grounds: (1) that the court should have excluded this prior act evidence under Fed.R.Evid. 403, and (2) that the doctrine of collateral estoppel precluded use of the evidence in the second trial.

■ The District Judge ruled that the disputed prior act evidence was admissible under Rule 404(b), Fed.R.Evid. Rule 404(b) provides:

(b) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

When reviewing the admissibility of evidence under Rule 404(b), the court must make two determinations. The first is whether the conduct of Johnson and Kidd which was at issue in the November trial was admissible for any of the proper purposes listed in Rule 404(b). *United States v. Cooper,* 577 F.2d 1079, 1088 (6th Cir.), *cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). If the evidence is admissible for a proper purpose, we must then consider whether the trial judge abused his discretion in concluding that the probative value of the evidence outweighed its potential prejudicial impact. *United States v. Vincent,* 681 F.2d 462 (6th Cir.1982); *United States v. Czarnicki,* 552 F.2d 698 (6th Cir.); *cert. denied,* 431 U.S. 939, 97 S.Ct. 2652, 53 L.Ed.2d 257 (1977); *United States v. Ring,* 513 F.2d 1001 (6th Cir.1975); Advisory Committee Note to Rule 404(b); Rule 403, Fed.R.Evid.

After careful consideration of the first issue, we conclude that the prior act evidence was admissible as tending to establish the criminal intent of the defendants. In order to prove the defendants' guilt on each count of the indictment, the government had the burden to prove that the defendants committed the acts complained of with an unlawful intent. We are aware, however, that the mere fact that intent is a formal element of the government's case does not, in all circumstances, justify admission of prior act evidence. For example, we have held that where intent is a formal

element of the government's case, but criminal intent can properly be inferred from the commission of the act itself, Rule 404(b)'s intent exception may not justify admission of the prior act evidence. *United States v. Ring,* 513 F.2d at 1008–09 *citing United States v. Fierson,* 419 F.2d 1020, 1022–23 (7th Cir.1969).

In the instant case, the intent of the defendants Johnson and Kidd was a material element of the charged offenses. *See United States v. Hamilton,* 684 F.2d 380 (6th Cir.1982). The defendants themselves underscored this materiality by consistently alleging their lack of intent throughout the pretrial proceedings and at trial prior to the swearing in of the jury. When an exception to Rule 404(b) is applicable, "the balance shifts toward admissibility, aided by appropriate cautionary instructions." *Ring, supra* at 1009.

We decline to rule that the District Judge's conclusion that the probative value of the prior conduct evidence outweighed its potential prejudicial effects constituted an abuse of discretion. We must reach this conclusion even when, were we to consider the issue *de novo,* we might decide differently, for "[I]n this particular area, the case law overwhelming characterizes the trial judge's discretion as 'very broad'." *Vincent, supra* at 465, *citing United States v. Czarnicki, supra; United States v. McPartlin,* 595 F.2d 1321 (7th Cir.), *cert. denied,* 444 U.S. 883, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979); *United States v. Long,* 574 F.2d 761 (3rd Cir.), *cert. denied,* 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978); *cf. United States v. Phillips,* 401 F.2d 301 (7th Cir. 1968).

II.

Defendants Johnson and Kidd also contend that the trial court erred in ruling that the doctrine of collateral estoppel did not bar admission of the prior act evidence.

■ The Supreme Court has recognized that the doctrine of collateral estoppel, in the appropriate circumstances, may bar relitigation of issues in a criminal case which have been decided in a prior criminal case.

In *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) the Court held that where the prosecution seeks to relitigate issues decided in the defendants favor in a prior criminal trial, both collateral estoppel and the fifth amendment double jeopardy clause prohibit the prosecution of the defendant for offenses arising out of the same transaction involved in the first trial. In determining whether collateral estoppel applies, the court must "examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." 397 U.S. at 444, 90 S.Ct. at 1194.

Unlike *Ashe,* however, the instant case does not raise a double jeopardy issue. The counterfeiting charges against Johnson and Kidd involved transactions separate and distinct from those which gave rise to the first trial in November, 1980. Nevertheless, defendants Johnson and Kidd maintain that even where the double jeopardy clause is not implicated, collateral estoppel may bar reintroduction of evidence used against the defendants in a previous criminal action which resulted in a verdict of acquittal.

■ Although the federal courts are in agreement that collateral estoppel may apply in situations where double jeopardy considerations are absent, *Oliphant v. Koehler,* 594 F.2d 547 (6th Cir.1979); *United States v. Keller,* 624 F.2d 1154 (3d Cir.1980); *King v. Brewer,* 577 F.2d 435 (8th Cir.); *Wingate v. Wainwright,* 464 F.2d 209 (5th Cir.1972), there is considerable disagreement about the extent of the doctrine's application.

In *Keller,* the Third Circuit favored broad application of collateral estoppel in criminal cases. The court held that collateral estoppel bars any evidentiary use of past criminal conduct for which a defendant has been acquitted. *Keller, supra* at 1160. This broad interpretation of the scope of collateral estoppel is similar to that of the Second and Fifth Circuit. *United States v. Mespoulede,* 597 F.2d 329 (2d Cir.1979); *Win-*

*gate v. Wainwright,* 464 F.2d 209 (5th Cir. 1972).

In *Oliphant,* this Court held that collateral estoppel only prohibits the government from relitigating *issues* which had previously been decided in the defendants favor. This Court stated that in making a collateral estoppel ruling, the court must first determine what the government is attempting to prove through reintroduction of the prior conduct evidence. The court must next determine whether the same issue had been decided by an earlier jury in the defendant's favor. If the Court finds that the issue has been so decided in the defendant's favor, collateral estoppel prohibits the admission of the prior conduct evidence. If, however, after examining the record of the first trial, that jury rationally have acquitted the defendant and *not* decided the issue in his favor, collateral estoppel does not bar admission of the prior conduct evidence. *Oliphant,* at 555.

In *Oliphant,* the state accused the defendant of rape. In two earlier trials, distinct from the one under consideration in *Oliphant,* the defendant had been acquitted of rape charges after raising the defense of consent. In the subsequent trial, the state alleged that defendant "orchestrated" an elaborate sequence of events culminating in rape. The defendant claimed the victim consented to intercourse. In rebuttal, the government offered the testimony of the alleged victims in the two prior criminal actions in which defendant was acquitted. The witnesses testified that prior to intercourse the defendant had orchestrated a sequence of events similar to that alleged by the government in the cause on trial. In reintroducing the evidence of defendant's prior conduct, the state sought to prove the existence of a scheme or plan designed by the defendant.

In applying the collateral estoppel principles as developed in *Ashe,* this Court held that the doctrine did not bar admission of the prior conduct evidence. We conclude that the issue the state sought to prove— existence of a scheme or plan—was not necessarily decided in the defendant's favor in the two prior trials. In reaching this conclusion, we reasoned that the first two

juries could have acquitted the defendant, by believing his consent defense, without finding that the alleged plan or scheme did not exist. Since the factual issue of the existence of the plan or scheme was not necessarily decided in the defendant's favor, the state was not prohibited from relitigating the issue with the prior act evidence. *Oliphant* at 555.

In the case at bar, the government introduced the evidence of the defendant's prior conduct in order to prove that the defendant became involved in the printing scheme charged in the second indictment with criminal intent. The government maintained that the mere commission of the acts in 1980 was probative of the defendant's intent when committing the acts charged in the second indictment.

▮ The government here was attempting to relitigate a factual issue that might have been decided by the jury in the first trial—whether the defendants did in fact commit the prior acts. If, after a thorough review of the entire record of the first case, we were to conclude that in acquitting the defendants the first jury must have necessarily decided that the defendants did not commit the acts in question, collateral estoppel would bar the admission of the prior conduct evidence in the second trial. *Oliphant, supra* at 555.

Based on the record before us, however, we cannot even attempt to determine whether collateral estoppel should apply to the prior conduct evidence disputed herein. The appellate record of this case does not contain a record of the first trial sufficient to make the collateral estoppel determination envisioned by *Ashe.*

Moreover, our review of the record indicates that the District Judge also lacked a sufficient basis to make the proper collateral estoppel analysis. We note, however, that the Order of April 29, 1981 (doc. 36) indicates that the Court heard defendant Johnson's oral motion to receive a transcript of the first trial *in forma pauperis.* Although the Court directed counsel for defendant Johnson to prepare the necessary motion and affidavit, the record contains no further indication that a transcript of the

first trial was actually prepared and later received by the defendant.

Accordingly, further post-trial proceedings on the applicability of collateral estoppel to the admissibility of the prior conduct evidence challenged in this appeal are necessary. The defendants should be afforded an opportunity to augment the record with a transcript of the first trial and bear the burden of persuading the District Court, *United States v. Mespoulede,* 597 F.2d 329, 333 (2d Cir.1979), that in introducing the disputed prior act evidence in the second trial, the government was attempting to relitigate an issue which the jury in the first case decided in defendant's favor. *Oliphant, supra* at 555.

In so far as the admissibility of the prior act evidence under Rules 403 and 404(b) is concerned, the judgments of conviction are affirmed. At this time, however, the collateral estoppel issue remains undetermined. On that issue the convictions are neither affirmed nor vacated; the cases are hereby remanded so that the record may be augmented and a determination made by the District Court as to whether the government's introduction of the prior act evidence was an attempt to relitigate matters necessarily decided by the first jury in the defendants' favor.