UNITED STATES of America,
Plaintiff-Appellee,

v.

Elijah RHEA, Defendant-Appellant.

No. 84–5025.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 10, 1984.

Decided Sept. 27, 1984.

Rehearing and Rehearing En Banc
Denied Nov. 12, 1984.

James F. Sanders, argued, Neal & Harwell, (Ct. appt), James G. Thomas, Nashville, Tenn., for defendant-appellant.

John W. Gill, U.S. Atty., John C. Cook, argued, John C. Littleton, Asst. U.S. Attys., Chattanooga, Tenn., for plaintiff-appellee.

Before EDWARDS and KEITH, Circuit Judges, and WALINSKI, District Judge.*

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.

This case records, through sworn testimony, believed by a Tennessee jury, a sordid story of state highway graft. Neither the State Commissioner of Transportation, Shaw, alleged in this record to have been the contemplated beneficiary [1] of the $60,000 graft payment nor the principal payers of that sum, land owners Shelton and Northcutt, were defendants in this trial. Shelton and Northcutt were land owners who had a prospective buyer for a shopping mall if a highway were constructed as to better the access to their land. Elijah Rhea, the defendant, according to the testimony obviously believed by this jury, was an intermediary—in common parlance a bag man. According to the sellers Defendant Rhea had promised to help on the highway with Shaw—adding, "It will cost you."

The charge upon which the defendant-appellant was tried was not that he carried the bag or even that he conspired with the principals in the proposed betrayal of public trust of the State of Tennessee. It was that, under oath, he lied before a federal grand jury about whether, why and where he acquired the bag.

The defense, urged with both legal skill and vigor by his counsel, is not so much that his client never carried the bag (although his lawyer disputed the validity of that proof). It is that the government is seeking to convict him for the same offense on which he had already been tried and found not guilty. Appellant thus relies upon the general prohibition against double jeopardy contained in the fifth amendment

---

* Honorable Nicholas J. Walinski, United States District Court for the Northern District of Ohio, sitting by designation.

1. This record does not contain testimony as to whether or not Shaw received the $60,000. There is, however, reference to other trials.

to the Constitution of the United States and more specifically, in this trial on the doctrine of collateral estoppel.

The constitutional phrase at issue reads "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." Collateral estoppel in the context of this case would forbid the government from convicting a defendant on proof of alleged facts which a jury had rejected by a not guilty verdict in an earlier trial.

This appeal concerns appellant's second trial. In his first trial, he was charged with two counts alleging the giving of false information under oath to a federal grand jury. Count 1 charged that Rhea falsely asserted that he went to the bank after hours for reasons other than to acquire the bribe money for Shaw. Count 2 charged that he falsely denied obtaining the $60,000 "at the bank." Northcutt testified that he gave the $60,000 to Rhea but could not remember whether he made the transfer to Rhea "at the bank" or after leaving the bank. The first trial jury found Rhea not guilty on Count 2 (obtaining the money at the bank). It could not reach a verdict on Count 1.

At the first trial of Defendant Rhea the District Judge charged the jury:

The indictment before you today contains two counts. Each of these counts charges the defendant, Elijah Rhea with violating the perjury laws of the United States. The first count of the indictment charges that on or about May 26th, 1981, before a grand jury of the United States of America duly impaneled and sworn in the United States District Court for the Eastern District of Tennessee, and during the course of an inquiry into alleged violations of federal law relating to an unlawful pay-off to a certain state official, the defendant, having taken an oath before the grand jury that he would testify truthfully, did knowingly make a false material declaration.

The indictment charges that the defendant, Elijah Rhea, told the grand jury that he went to the City Bank and Trust Company of McMinnville, Tennessee, on or about February 10, 1978, after regular banking hours, in order to see one Mr. Golden about arranging for credit to be established at the bank and to see a Mr. Morrison about a development this defendant was involved in.

The indictment charges that this statement was false and the defendant made it knowing that it was false and that the true reason the defendant went to the bank was to obtain money, purportedly to be used as an illegal pay-off to a State official.

The second count of the indictment charges that the defendant knowingly made another false material declaration at the same grand jury proceeding as I spoke about earlier. The indictment charges that the defendant testified that he did not receive any money from anyone at the bank on or about the evening of February 10, 1978.

The indictment charges that this statement was false and made by the defendant knowing of its falsity because he did receive some $60,000 from two men at the bank.

Upon the other hand, it is the defendant's theory in this case that he told the truth in his grand jury testimony of May 26, 1981. Specifically, it is the defendant's position or theory that he did go to the City Bank and Trust Company on February 10, 1978, for the combined purposes of talking with Mr. Golden about obtaining a line of credit and talking with Mr. Morrison about the possibility of obtaining work on the proposed Three Star Mall project.

It is further the defendant's position that he did not receive a package containing $60,000, or anything else, from Mr. Shelton or Mr. Northcutt or both of them on that day. Mr. Rhea has testified that he went to the bank on that evening because Mr. Joe Shelton had led him to believe that he, Mr. Rhea would be able to meet with Mr. Golden and Mr. Morrison at that time and that Mr. Shelton

would also speak to Mr. Golden and Mr. Morrison on Mr. Rhea's behalf.

At the second trial the District Judge charged the jury:

> The indictment charges that the defendant, Elijah Ray [sic], told the grand jury that he went to the City Bank and Trust Company of McMinnville, Tennessee, on or about February 10, 1978, after regular banking hours in order to see one Mr. Golden about arranging for a credit to be established at the bank and to see a Mr. Morrison about a development in which the defendant was involved. The indictment charges that this statement was false, and the defendant made it knowing that it was false, and that the true reason the defendant went to the bank was to obtain money purportedly to be used as an illegal payoff to a State official.

The jury in the second trial found Defendant Rhea guilty on the one perjury count on which he was charged in that trial. He was sentenced to two years with all but 120 days suspended and ordered to pay a fine of $2,000.00. On appeal defendant contends primarily that the District Court erred by allowing the Government, over objections, to relitigate the same factual issue that the first jury had resolved in defendant's favor—namely, the issue presented on Count 2 in the first trial upon which defendant was found not guilty by the first jury. We believe that the jury's "not guilty" answer to the perjury charge at the first trial (Count 2) reflected the trial judge's charge that it must determine whether or not Appellant Rhea obtained the money "at the City Bank and Trust Co." As to this count the District Judge also charged "if the defendant truthfully answered one reasonable interpretation of the question under the circumstances presented, then such answer would not be false." Under this instruction Rhea's negative answer to the Count 2 question was logically a response that the Government failed to prove that Rhea got the money "at the bank." The jury so found by its not guilty verdict. Any other interpretation is ruled out by the fact that the same first trial jury failed to reach a verdict on the perjury charge in Count 1 concerning Rhea's purpose for going to the bank. It was this issue which was resubmitted to the second jury which rendered the guilty verdict from which Rhea now appeals.

None of the precedent cited to us by appellant controls this case or requires reversal of this conviction. In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) the accused was tried as the man who held up one of the participants in a gambling game. In the first trial he was found not guilty. In the second trial he was charged with robbing another of the participants in that same game at the same time and place. Clearly the first jury had found that he had not been proved to have participated in the robbery. As shown above that is certainly not this case.

Nor do we believe that any Sixth Circuit precedent requires any different answer than that given above. We have followed the two step analysis set forth in *U.S. v. Johnson*, 697 F.2d 735 (6th Cir.1983). We have held above that at the second trial the Government convinced a unanimous jury that it had established a fact (i.e., that Appellant lied about why he went to the bank) which fact had not been decided by the preceding jury. Nor does *Oliphant v. Koehler*, 594 F.2d 547 (6th Cir.1979) supply any argument to the contrary of the opinion above—either by majority or dissenting opinion.

Any error in this trial in admitting or excluding evidence we find to be harmless beyond reasonable doubt.

The judgment of the District Court is affirmed.