815 F.2d 80
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Milton MILLER, D.O., Defendant-Appellant.
 No. 86-1427.
 United States Court of Appeals, Sixth Circuit.
 Feb. 5, 1987.
 
 Before ENGEL and JONES, Circuit Judges, and ALLEN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Milton Miller appeals his jury conviction of unlawfully distributing controlled substances and unlawfully using a communication facility in violation of 21 U.S.C. Secs. 841(a)(1) and 843(b) (1982). Miller raises several claims of error. We conclude that these claims are without merit and affirm the judgment of conviction.
 
 
 2
 Miller was charged in an eighteen count indictment in the Eastern District of Michigan. Seventeen counts charged that he had unlawfully distributed controlled substances outside the usual course of a medical practice in violation of Sec. 841(a)(1). The final count charged that he had unlawfully used a communication facility in violation of Sec. 843(b). Miller was found guilty as charged on all eighteen counts after a jury trial. He was sentenced to five years imprisonment on counts one through nine, to be served concurrently with each other, but consecutive to the ten-year sentence imposed on counts ten through eighteen, for an effective total sentence of fifteen years. He was also fined $135,000.
 
 
 3
 Based on information and an introduction provided by a confidential informant, undercover Drug Enforcement Administration (DEA) agent Chavarria met with the defendant at the defendant's office on April 18, 1984. The agent asked the defendant if he could purchase some diet pills. After a brief examination that included taking blood pressure, listening to the heart, and weighing the agent, the defendant provided the agent with 42 tablets of the Schedule III drug phendimetrazine for $20. The agent returned to defendant's office on May 15, 1984. He was not weighed or examined by the defendant at that time. The agent nonetheless received 84 tablets of the Schedule II drug dextroamphetamine for $40. On May 30, 1984, the defendant sold the agent an additional 21 dextroamphetamine pills without any medical examination. Subsequent purchases were made without any medical examination and without the purchases being recorded on the agent's patient card. The final purchase was made on January 11, 1985. At no time after the first meeting was the agent's weight taken or recorded.
 
 
 4
 On August 1, 1984, undercover DEA agent Botta met with the defendant. After taking the agent's weight, blood pressure, and listening to his heart, the defendant sold him 21 tablets of dextroamphetamine for $10. Subsequent purchases of dextroamphetamine tablets were made by the agent without medical examination and without the sales being recorded on the agent's patient card. The final purchase was made on June 21, 1985.
 
 
 5
 On November 6, 1984, undercover DEA agent McGroarty met with the defendant. After a brief physical exam, the defendant sold the agent 21 dextroamphetamine pills for $10. When the agent asked for more pills, the defendant promised him that he could get more the following week. The agent purchased more tablets of dextroamphetamine from the defendant on November 19, 1984, January 9, 1985, and January 15, 1985. These transactions lasted 10-15 seconds, did not involve any medical examination, and were not recorded on the agent's patient record.
 
 
 6
 On November 27, 1984, undercover DEA agent Maynard visited the defendant's office. After the agent indicated that he needed some diet pills, the defendant conducted a brief physical examination. The defendant then provided the agent with 21 dextroamphetamine pills for $10. On four subsequent occasions the agent purchased tablets without first being given a medical examination. The agents final purchase was made on June 21, 1985. None of the agent's drug purchases except the first were recorded by the defendant on the agent's patient record.
 
 
 7
 As a licensed medical practitioner, the defendant was allowed to lawfully dispense controlled substances only in the usual course of his professional practice and for legitimate medical purposes. The Board of Osteopathy of the Michigan Department of Licensing and Regulation, which issued the defendant's medical license, set down certain restrictions on the use of amphetamines for weight loss from January 23, 1982, until June 6, 1985. A physician was allowed to administer the drug only when other weight loss programs had proven ineffective. A complete physical and medical history was required, including a finding as to whether contraindications to the use of the drug existed. The findings were then to be entered in the patient's record. The patient was to be weighed at each visit, with the drug to be discontinued if the patient did not achieve a significant weight loss in the time between visits. Weight, blood pressure, and pulse were to be entered on the patient's record at each visit. In no event were amphetamines to be dispensed to a patient for longer than 90 days. As of June 7, 1985, amphetamines were no longer to be dispensed for the treatment of obesity.
 
 
 8
 The defendant purchased and distributed large amounts of amphetamines and phendimetrazines over the period just before and during the time frame of the indictment. Between November 1980 and June 1985, the defendant purchased 2,630,000 dosage units of amphetamines. Approximately 330,954 units were seized from his office on June 28, 1985. Another 784,000 units were surrendered to the DEA in October 1985. The defendant dispensed at least 1,515,046 units of amphetamines between November 1980 and June 1985. Between November 1980 and June 1985, the defendant purchased 665,000 dosage units of phendimetrazine. Approximately 265,711 were seized from his office on June 28, 1985, so at least 399,289 units of that drug had been dispensed since November 1980.
 
 
 9
 Patient records revealed that the defendant treated his ordinary patients in the same fashion as he treated the undercover agents. The defendant dispensed amphetamines to persons who were not obese, to persons who had high blood pressure, for long periods of time, without recording weights, heights or blood pressures, and without noting significant weight reductions. None of the patient records indicate that any other treatment was ever tried and proven ineffective prior to dispensing dextroamphetamine or phendimetrazine.
 
 I.
 
 10
 The defendant first claims that the district court abused its discretion in denying his motion to strike alleged prejudicial surplusage from the indictment. The defendant specifically cites the portions of the indictment setting forth (1) the applicable state amphetamine regulations, (2) the quantity of amphetamines and phendimetrazine he had purchased, and (3) his ranking in amphetamine purchases in comparison to other doctors.
 
 
 11
 Paragraphs two and three of the indictment set forth the substance of the applicable regulations of the State of Michigan in regard to dispensing amphetamines. Paragraph four alleged that the defendant had purchased approximately 2,630,000 dosage units of dextroamphetamine and approximately 380,000 dosage units of phendimetrazine from October 1, 1980, through November 26, 1984. Paragraph four also alleged that during 1982 the defendant was the second largest purchaser of amphetamines in the United States, and that in the first nine months of 1984 he was the largest purchaser of amphetamines in Michigan.
 
 
 12
 A motion to strike alleged surplusage under Fed.R.Crim.P. 7(d) is subject to the sound discretion of the district court and its ruling will not be reversed on appeal absent an abuse of discretion. United States v. Kemper, 503 F.2d 327, 329-30 (6th Cir.1974), cert. denied, 419 U.S. 1124 (1975). The striking of surplusage is "permissive but not mandatory," and Rule 7(d) may properly be invoked only when the indictment contains non-essential allegations that could unfairly prejudice the jurors. The rule has been "strictly construed against striking surplusage." Id. at 329.
 
 
 13
 In the instant case, the government had to allege and prove that the drugs were distributed outside the usual course of medical practice. Accordingly, allegations that the defendant had violated minimal state standards for dispensing amphetamines and had purchased drugs on a large scale were relevant and material. Therefore, the district court did not abuse its discretion in denying the motion to strike. Cf. United States v. Krasnoff, 480 F.Supp. 723, 730 (S.D.N.Y.1979) (court refused to strike as overly prejudicial the allegation that a doctor had prescribed "massive amounts" of prescriptions for controlled substances).
 
 
 14
 The defendant also challenges the district court's evidentiary rulings admitting the regulations and the quantity of drugs purchased into evidence. Once the defendant's motion to strike was denied, he filed a written motion in limine to exclude objectionable evidence. The court granted the motion in part and denied it in part. The court concluded that the state regulations were admissible under Fed.R.Evid. 403. The court also ruled that the amounts of drugs purchased and the defendant's ranking in comparison to other purchasers were admissible under Fed.R.Evid. 404(b). The proposed evidence of the defendant's ranking among physician drug purchases, however, was later excluded by the court upon a mid-trial reconsideration.
 
 
 15
 The court's ruling on the admission of the state regulations is proper. A district judge's decision under Fed.R.Evid. 403 is to be upheld absent an abuse of discretion. United States v. Brady, 595 F.2d 359, 361 (6th Cir.), cert. denied, 444 U.S. 862 (1979). The evidence was probative of criminal intent because it established that the defendant, who had a copy of the regulations in his possession, was familiar with the amphetamine regulations but nonetheless acted in contravention of them. Consequently, the district court did not abuse its discretion in admitting the evidence.
 
 
 16
 The court's decision to allow the admission of the evidence regarding the amount of drugs purchased is also correct. Rule 404(b) allows the admission of other crimes, wrongs or acts as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." A district court's admission of evidence under this rule is reviewable under the abuse of discretion standard. See United States v. Johnson, 697 F.2d 735, 738 (6th Cir.1983). It is well-settled that evidence of large scale purchases and distributions of drugs is admissible under Rule 404(b). In United States v. Ellzey, 527 F.2d 1306, 1307 (6th Cir.1976), this court ruled that evidence of 29,000 prescriptions written by a defendant-physician charged with violating 21 U.S.C. Sec. 841(a)(1) were admissible because they were relevant to the issues of intent and willfulness. Accord, United States v. Stump, 735 F.2d 273, 274-75 (7th Cir.), cert. denied, 105 S.Ct. 203 (1984). United States v. Blanton, 730 F.2d 1425 (11th Cir.1984); United States v. Jackson, 576 F.2d 46, 49 (5th Cir.1978). In light of this substantial precedent, and the fact that large scale purchases were highly probative of intent, the court's ruling on this issue was proper.[1]
 
 II.
 
 17
 The defendant also claims that the indictment returned against him by the grand jury failed to state a cause of action. He argues that his actions do not fit within the criminal acts contemplated by 21 U.S.C. Sec. 841(a)(1). That section provides that:
 
 
 18
 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--
 
 
 19
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....
 
 
 20
 This court has held that an indictment states an offense against a licensed practitioner if it alleges that controlled substances were distributed unlawfully:
 
 
 21
 As a matter of law, a registered doctor is subject to the criminal penalties of Sec. 841(a)(1) if he is not acting within the usual course of professional conduct. Thus, the allegation of distribution in violation of Sec. 841(a)(1) includes the legal definition that the drugs were not dispensed, i.e., distributed in the usual course of professional practice.
 
 
 22
 United States v. Seelig, 622 F.2d 207, 211 (6th Cir.1980) (citation omitted). See also United States v. Moore, 423 U.S. 122 (1975). In the instant case, the indictment included an allegation of unlawful distribution and distribution "outside the usual course of medical practice," as well as the specific ways and means that the defendant's conduct was outside the scope of legitimate medical practice. It clearly detailed the manner in which the statute was violated. Consequently, the indictment was proper and did state a cause of action against the defendant.[2]
 
 III.
 
 23
 The defendant's final claim is that the fifteen-year sentence he received amounted to an abuse of discretion. He asserts that the court disregarded his thirty-five years of good character and was mechanical in sentencing him because his crime involved illegal distribution of drugs.
 
 
 24
 A district judge has wide discretion in determining what sentence to impose. United States v. Tucker, 404 U.S. 443, 446 (1972). There are few exceptions to the rule that a sentencing decision by a district judge is unreviewable if it is within the statutory limits. See Dorszynski v. United States, 418 U.S. 424, 431 (1974). The exceptions are (1) where the court has relied on erroneous or improper factors or information in sentencing so as to amount to a gross abuse of discretion; and (2) where the court has failed to evaluate the sentencing information submitted, or totally failed to exercise its discretion. United States v. Barbara, 683 F.2d 164, 166 (6th Cir.1982).
 
 
 25
 The sentence imposed by the court was clearly within the statutory limit. Counts ten through sixteen each carried a fifteen-year maximum sentence, yet defendant was sentenced to ten-year concurrent terms on each of these counts. Defendant's allegation that the judge failed to exercise discretion in imposing sentence is unsupported by the record. The judge considered the relevant information before him prior to imposing sentence. The sentence is in line with the crime and within the district court's discretion.
 
 
 26
 Accordingly, the judgment of conviction is AFFIRMED.
 
 
 
 *
 Honorable Charles M. Allen, Senior Judge, United States District Court for the Western District of Kentucky, sitting by designation
 
 
 [1]
 As previously noted, the proposed evidence of the defendant's ranking among physician drug purchasers was excluded by the court upon a mid-trial reconsideration. The court, however, had already read the allegations in the indictment to the jury, and the government's attorney had mentioned the proposed testimony in his opening statement. After the court's ruling on this evidentiary issue, the defendant moved for a mistrial. The motion was denied. The defendant contends that he was prejudiced by the fact that his ranking was included in the indictment, although no evidence on the issue was introduced. This contention is meritless. First, the judge clearly instructed the jury that its verdict should be based only on the evidence presented. Second, the judge on at least two occasions told the jury that the indictment was not evidence. Finally, if there was any error, it would appear to be harmless. The evidence against the defendant appears to have been overwhelming. Therefore, it is very doubtful that the jury's verdict was based on the allegation of defendant's ranking in the indictment
 
 
 [2]
 Defendant also argues that the statute he is charged with violating is unconstitutionally vague as applied because it fails to accord notice to a doctor of what constitutes prohibited conduct and encompasses medical treatment that is not improper. This argument is without merit