876 F.2d 104
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William E. GHINDA, Defendant-Appellant.
 No. 87-3873.
 United States Court of Appeals, Sixth Circuit.
 June 13, 1989.
 
 Before KRUPANSKY and DAVID A. NELSON, Circuit Judges, and BARBARA K. HACKETT, District Judge.*
 PER CURIAM.
 
 
 1
 This is an interlocutory appeal from the denial of certain motions filed by the defendant in a federal criminal case that has already been tried once. The original trial resulted in an acquittal on two counts of a three-count indictment; the jury was deadlocked as to the remaining count. The defendant moved to dismiss that count on double jeopardy grounds, and he also moved to preclude the government from reintroducing certain evidence in the event of a second trial. The theory of the latter motion is that use of the evidence in question would expose the defendant to the possibility of a verdict inconsistent with that returned by the jury at the first trial. We shall affirm the district court's ruling on the motion to dismiss, but reverse the ruling on the evidentiary question.
 
 
 2
 * A federal grand jury indicted the defendant, William E. Ghinda, and 17 other persons on drug-related charges. Mr. Ghinda was accused of illegal use of a communications facility, violation of the Travel Act, and conspiracy to distribute cocaine.
 
 
 3
 When the case went to trial, Robert Armstrong, who had been indicted as a co-conspirator, testified that he was a member of the conspiracy to distribute; that he in fact participated in the distribution of cocaine; and that one of his duties was to deliver cocaine to Mr. Ghinda. Another piece of evidence on which the government relied was an account book seized from the house trailer of Dennis Delbene, who had also been indicted as a co-conspirator. The book showed a number of transactions in an account carried under the name of "Billy G." Mr. Ghinda was said to be that person. Billy G.'s account showed dealings in five-ounce lots of cocaine at prices of over $8000 each. Armstrong testified that Delbene, who recruited him to make deliveries of cocaine, told him that only Mr. Ghinda and one other person could receive deliveries of as much as five ounces.
 
 
 4
 The government relied also on numerous telephone calls that had been tape recorded. Arranging these calls chronologically and comparing them to the entries in the account book, the government attempted to relate the conversations to the cocaine transactions disclosed in the book.
 
 
 5
 The government attributed some of the telephone calls to Mr. Ghinda. In only one instance did the caller identify himself; on that occasion the individual called himself "Billy." Most of the calls were innocuous on their face, but some contained references to "raffle tickets;" the government contended that this was a code word for cocaine.
 
 
 6
 The government attempted to show that Mr. Ghinda had violated the Travel Act by going from Ohio to Florida in furtherance of the conspiracy to distribute cocaine. Some of the allegedly illegal telephone calls said to have been made by Mr. Ghinda were placed from Florida to the alleged co-conspirators in Ohio.
 
 
 7
 A petit jury returned verdicts of not guilty on the Communications and Travel Act counts, but the jury was unable to reach a verdict on the conspiracy count. The district court declared a mistrial as to that count. Mr. Ghinda then filed a motion to dismiss and a motion in limine to bar reintroduction of the phone call and travel evidence. The motions were denied, and this appeal followed.
 
 II
 
 8
 Mr. Ghinda argues here, as he argued before the district court, that the evidence of his telephone calls and travel ought not to be admitted at the second trial because the jury determined in the first trial that they were not criminal acts. The government argues, and the district court held, that the evidence of the telephone calls and travel may be introduced at the second trial as evidence of overt acts in furtherance of the alleged conspiracy. The government suggests that Mr. Ghinda might have been acquitted of the Travel Act count because "he failed to make the cocaine connection in Florida," and it suggests that he might have been acquitted of the communications facility charge because the jury was not satisfied that the conversations about "raffle tickets" concerned cocaine, or because the jury was not convinced that Mr. Ghinda was Billy G. The government maintains that "the conspiracy count contemplates a class of conduct wholly different than merely using a telephone or traveling in interstate commerce." We are not persuaded.
 
 
 9
 To prove that Mr. Ghinda illegally used a communications facility, as the district court instructed the jury, the government would have had to show that he made a telephone call with the intent of facilitating the distribution of cocaine. 21 U.S.C. Sec. 843(b); United States v. Barnes, 681 F.2d 717, 723 (11th Cir.1982), cert. denied, 460 U.S. 1046 (1983). To obtain a conviction on the Travel Act charge, similarly, the government would have had to prove that the defendant crossed a state line with the intent of facilitating the distribution of cocaine, and that he committed some act in furtherance of the unlawful purpose after crossing the state line. United States v. Blanco, 844 F.2d 344, 352 (6th Cir.), cert. denied, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988). The jury acquitted Mr. Ghinda of these charges.
 
 
 10
 To have returned a guilty verdict on the conspiracy count, the jury would have had to decide merely that Mr. Ghinda knowingly and voluntarily joined a conspiracy to distribute cocaine. 21 U.S.C. Sec. 846; United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986). Although proof of an overt act in furtherance of the conspiracy is not an element of the offense defined in Sec. 846 (contrary to the district court's charge in this case), proof of such an act is relevant to the existence or goals of the conspiracy. United States v. Boucher, 796 F.2d 972, 976 (7th Cir.1986); United States v. Spector, 793 F.2d 932, 936 (8th Cir.1986), cert. denied, 479 U.S. 1031 (1987).
 
 
 11
 In defining an overt act, the court instructed the jury as follows:
 
 
 12
 "An 'overt act' is any act knowingly committed by one of the conspirators in an effort to effect or accomplish some object or purpose of the conspiracy. The overt act need not be criminal in nature, if considered separately and apart from the conspiracy. It may be as innocent as the act of a man who walks across the street or drives an automobile or uses a telephone.
 
 
 13
 "It must, however, be an act which follows and tends toward accomplishment of the plan or scheme and must be knowingly done in furtherance of some object or purpose of the conspiracy charged in the indictment."
 
 
 14
 See 2 Devitt and Blackmar, Federal Jury Practice and Instructions, Sec. 27.07, p. 22 (3d ed. 1977). While overt acts need not be illegal or criminal in and of themselves, Braverman v. United States, 317 U.S. 49, 53 (1942), they may be. Pinkerton v. United States, 328 U.S. 640, 644 (1946). If in this case the government had proved the charges of illegal use of a communications facility and interstate travel in violation of the Travel Act, it would have shown proscribed overt acts. Because it failed to prove every element of these two charges, conversely, the government wound up with a verdict that cannot be reconciled with the claim that the calls and travel were overt acts in furtherance of a conspiracy.
 
 
 15
 The general proposition is well-settled; the government may not try to prove an historic fact at a second trial when it tried and failed to prove the asserted fact at an earlier one. Sealfon v. United States, 332 U.S. 575, 578-80 (1948). Any such attempt would violate a defendant's constitutional right to be free from twice being placed in jeopardy. Ashe v. Swenson, 397 U.S. 436, 445-46 (1970).
 
 
 16
 This "collateral estoppel" principle is not so sweeping that it automatically bars all reuse of evidence of the defendant's actions. United States v. Davis, 809 F.2d 1194, 1206 (6th Cir.), cert. denied, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987); United States v. Johnson, 697 F.2d 735, 740 (6th Cir.1983); Oliphant v. Koehler, 594 F.2d 547, 554-55 (6th Cir.), cert. denied, 444 U.S. 877 (1979). In Davis, for example, a jury had acquitted the defendant of illegally distributing narcotics and illegally using a communications facility. The defendant had presented evidence of entrapment. At a second trial the government was permitted to use the same evidence as at the first trial to show overt acts in furtherance of a conspiracy charged under Sec. 846. We permitted this because the first jury had not necessarily decided that the defendant had not committed the overt acts; the jury might have decided that the defendant was innocent because of the government's misconduct.
 
 
 17
 The analysis undertaken in Davis reflects the "realism and rationality" with which claims of collateral estoppel must be assessed:
 
 
 18
 "Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' "
 
 
 19
 Ashe v. Swenson, 397 U.S. at 444 (quoting, in order, Mayers & Yarborough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv.L.Rev. 1, 38-39 (1960), and Sealfon, 332 U.S. at 579) (citations and footnote omitted).
 
 
 20
 Analyzing the present case in this light, we cannot accept the government's contention that the first jury made no findings capable of defeating the government's right to show at the second trial that Mr. Ghinda's telephone calls and travel were overt acts in furtherance of a conspiracy. The nature of the charges in the indictment makes this contention untenable. The first jury could not have grounded its acquittal on any determination that would permit the government to use evidence of the phone calls and travel in the second trial on the conspiracy charge.
 
 
 21
 With respect to both the telephone calls and travel, the district court reasoned that because overt acts need not be criminal, the acquittals at the first trial would not preclude a subsequent finding that the calls and travel were overt acts. In some circumstances, this would obviously be true. Here, however, proof that the phone calls and travel were overt acts in furtherance of a conspiracy would be identical to proof of the substantive offenses of which Mr. Ghinda was acquitted.
 
 
 22
 As to the telephone calls, the government argues that the jury found either that the ostensible topic of some of them, "raffle tickets," was not cocaine or that Mr. Ghinda was not "Billy G." In its brief to the district court, the government argued only the first of these contentions: "[t]he jury rejected illegal use of the telephone as the defendant offered evidence of his dealings in gold, silver, and luggage, he suggested his lack of intent to use the telephone to violate narcotics communications laws." Mr. Ghinda agrees that this is what the jury found, and says--correctly--that if the calls were made without any intent to distribute cocaine, they would not be overt acts in furtherance of an illegal conspiracy.
 
 
 23
 As to the government's new rationale--that Mr. Ghinda was found not to have been Billy G.--the argument is self-defeating. If the jury found that Mr. Ghinda was not Billy G., the telephone calls would not show that Mr. Ghinda was a member of the conspiracy.
 
 
 24
 As to the allegedly illegal travel, the government suggests that Mr. Ghinda traveled to Florida to secure cocaine but failed--and the jury acquitted him because he failed. It is not an element of the crime charged, however, that a defendant succeed at what he sets out to do when he travels; he need only act in furtherance of his purpose once he arrives at his destination. Here the government used evidence of telephone calls made by Mr. Ghinda from Florida to show that the purpose of the travel was to facilitate the distribution of cocaine. If the purpose of the calls was to facilitate such distribution, then the jury could have convicted Mr. Ghinda even though he failed to secure cocaine. Blanco, 844 F.2d at 352. As we have seen, however, the jury necessarily found the government failed to prove that the purpose of the travel was to distribute cocaine. The government therefore cannot reintroduce evidence of that travel as evidence of an overt act in furtherance of the conspiracy.
 
 III
 
 25
 Although we believe that the motion in limine ought to have been granted, the motion to dismiss was properly denied. Robert Armstrong's testimony about delivering five-ounce shipments of cocaine to Mr. Ghinda, the account book containing references to Billy G. and five-ounce shipments of cocaine, and the telephone conversations that did not directly involve Mr. Ghinda could suffice to show that a conspiracy existed and that Mr. Ghinda was a member of it.
 
 
 26
 Accordingly, we REVERSE the denial of the motion in limine and AFFIRM the denial of the motion to dismiss.
 
 
 
 *
 The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation